IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02968-NYW

RAYMUNDO GURROLA,

      Plaintiff,

v.

JEFFERSON COUNTY SHERIFF'S OFFICE;
JEFF SCHRADER, Sheriff in his Official Capacity; and
WELLPATH,

      Defendants.

---

## DEFENDANT WELLPATH'S MOTION TO DISMISS
## PLAINTIFF'S PRISONER COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Defendant Wellpath, through counsel, Catherine O'Brien Crum and Rodrigo Lugo of the law firm Nixon Shefrin Ogburn Drew, PC, respectfully moves this Court to dismiss Plaintiff's Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and as grounds therefor states as follows:

### CERTIFICATE OF CONFERRAL

This is a motion under F.R.C.P. 12(b)(6) in a case with an unrepresented prisoner and is therefore exempt from the general duty to confer under D.C.Colo.LCivR 7.1.

### INTRODUCTION

Raymundo Gurrola ("Plaintiff") is a pretrial detainee at the Jefferson County Jail ("Jail"). On September 30, 2020, Plaintiff filed a prisoner complaint ("Complaint") [ECF

1] naming the Jefferson County Sheriff's Office, Sheriff Jeff Shrader, and Wellpath as defendants in an action brought pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint alleges that the jail staff had inadequate health and safety protocols which threatened Plaintiff to exposure and infection by the SARS-CoV-2 coronavirus (hereinafter "COVID-19"). Plaintiff also complains about the conditions of his confinement, claiming that the jail facilities are dirty. [*Id.*] Although Plaintiff does not expressly describe them as such, his Complaint appears to make two claims: a claim that his conditions of confinement constitute cruel and unusual punishment under the Eighth and Fourteenth amendments, and a claim that the Jail's safety protocols demonstrate deliberate indifference to a medical issue, constituting cruel and unusual punishment under the Eighth and Fourteenth Amendments.

Wellpath respectfully requests the claims against it be dismissed with prejudice because Plaintiff has not pleaded a constitutional violation caused by Wellpath; Plaintiff has not adequately pleaded that Wellpath has a policy or custom that led to his injury; and Wellpath is healthcare provider immune from liability pursuant to the PREP Act.

## LEGAL STANDARD

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

2

(2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by the Federal Rule of Civil Procedure 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## STATEMENT OF FACTS

The following statement is taken from Plaintiff's Complaint and accepted as true only for purposes of the present Motion. While Wellpath only needs to respond to the allegations directed against it, this statement summarizes all of Plaintiff's allegations for full context.

Plaintiff was arrested and booked into the Jail on July 16, 2020 by Jefferson County Deputy #2595. [ECF 1 at 5]. At the time of booking, Plaintiff told the Deputy that in the two weeks prior he had been tested twice for COVID-19 and that both tests had come back negative. [*Id.*] Plaintiff denied having any symptoms of COVID-19. [*Id.*] Plaintiff was given a cloth mask and placed into a quarantine pod for two weeks, during which he was in a 23-hour in-cell lockdown. [*Id.*] After the mandatory quarantine period,

Plaintiff was moved to a maximum security module, and sometime thereafter, he was moved to a medium security module, where he currently remains. [*Id.* at 7].

Plaintiff has several complaints about the "filthy" and unsanitary" conditions at the Jail. He claims his assigned cell during the quarantine period was so "filthy" so as to pose a "serious health violation." [*Id.* at 5]. He claims cleaning supplies in all the modules were limited and that common areas such as the showers, tables, phones and kiosks were not cleaned regularly. [*Id.* at 6-7]. He claims the kitchen was not cleaned and that there was "black mold" growing on kitchen supplies. [*Id.* at 9]. Finally, Plaintiff complains that he and other inmates are provided only two pairs of clean uninforms per week, and if they want to clean them more often they must so do in the "dirty" unit showers. [*Id.* at 6-7].

Plaintiff also has several complaints about the Jail's COVID-19 protocols. Plaintiff complains that the Jail lacks proper social distancing. His quarantine pod included 15 other inmates who had not been tested. [*Id.* at 5]. During meals, all the inmates line up next to each other, "shoulder to shoulder" less than 3 feet apart, and the person serving them goes from module to module "without personal sanitation." [*Id.* at 6, 8]. Plaintiff also claims the jail is supposed to be operating at half-capacity, but that each "cave" cell has 7 inmates with beds spread only 24 inches apart. [*Id.* at 8].

Plaintiff acknowledges that he was given a face mask to help reduce his risk of COVID-19 infection. [*Id.* at 5, 9-10].  However, Plaintiff complains that the cloth mask he was first given was dirty and smelled as if it had not been washed. [*Id.* at 5]. Plaintiff was later provided a disposable paper mask, but he complains that they are only

allowed to exchange it once a week. [*Id.* at 8-9]. Plaintiff also complains that he was never provided hand sanitizer. [*Id.* at 9].

Plaintiff complains that the Jail's COVID-19 protocols were inadequate, placed him at risk of COVID-19 infection, and led to multiple outbreaks at the facility. [*Id.* 5-11]. Plaintiff claims that the stress of possible COVID-19 exposure, combined with the dirty conditions of his confinement, caused him severe emotional distress and trauma. [*See generally* ECF 1].

Plaintiff only addresses Wellpath or its staff in a single sentence of his statement of claim. In his only factual allegation against Wellpath, Plaintiff acknowledges that the "medical staff"[1] would check the inmates' vitals and dispense medication; however, he complains that the medical staff would "go from module to module…without any personal sanitation of self or equipment." [ECF 1 at 6]. There is no other mention of either Wellpath or the medical staff in the entire statement of claim.

## **ARGUMENT**

Plaintiff's Complaint does not satisfy the strict pleading standards necessary to survive a 12(b)(6) motion to dismiss. The Complaint fails to allege a plausible claim for relief against Wellpath, and thus all claims against Wellpath must be dismissed.

At the pleading stage, it is not the defendant's or the Court's responsibility to guess at plaintiff's claims. *Twombly*, 550 U.S. at 555; *Robbins*, 519 F.3d at 1248-49. Plaintiff must explain what each defendant did to him, when the defendant did it, how

---

[1] Presumably, this refers to Wellpath. This singular statement is the only one in which Plaintiff alleges that Wellpath or its employees caused him a constitutional injury.

the defendant's action harmed him, and what specific legal right the defendant violated. *Nasious v. Two Unknown B.IC.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff is appearing pro se, and his Complaint does not expressly state the constitutional claims he is trying to raise. However, Plaintiff complains about the dirty conditions of his confinement, and about the Jail's allegedly inadequate COVID-19 protocols. Thus, his Complaint appears to raise two claims for relief: a conditions-of-confinement claim and a deliberate-indifference-to-medical-need claim. Regarding the former claim, Wellpath asserts that it is not responsible for Plaintiff's conditions of confinement; that is the sole responsibility of the Sheriff's office. The latter claim also appears to be mainly directed toward the sheriff's deputies, and is based on claims of inadequate social distancing, and complaints about the masks Plaintiff was provided. The location of detainees in the Jail and the conditions of confinement thereof are solely and exclusively under the control of the Sherriff and Deputies. The Wellpath nursing staff has no authority regarding housing locations or conditions of confinement. Plaintiff also alleges essentially that medical staff gave medications with out wearing proper personal protection.  Yet no specific nurse or medical staff member was named.  All of Plaintiff's claims against Wellpath should be dismissed for the following reasons: (1) Plaintiff does not allege that Wellpath was responsible for the Jail's sanitation procedures, the lack of social distancing, or the masks provided and indeed Wellpath is not responsible for such actions—thus, Wellpath need not respond further to these allegations; (2) to the extent that Plaintiff complains about the medical staff's use of it's own personal protective equipment,  Plaintiff does not allege a constitutional violation,

nor does he allege a policy or custom which caused him a constitutional injury; and (3) as a covered healthcare provider implementing COVID-19 countermeasures, Wellpath is entitled to the immunity afforded by the PREP Act.

A. **Wellpath is not responsible for the Jail's conditions with regard to sanitation, social distancing, or providing masks, Plaintiff does not assert it is and thus Wellpath need not address those allegations.**

Plaintiff's Complaint does not allege that Wellpath was responsible for the inadequate sanitation of the Jail facility or the conditions of his confinement. Indeed, Wellpath is not responsible for the conditions of confinement alleged. If Plaintiff sought to hold Wellpath responsible for his conditions of confinement, he would need to plead facts which allow the court to infer that Wellpath is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Specifically, because Wellpath is a private corporation, Plaintiff would have to plead that Wellpath has a policy or custom that caused the dirty conditions of confinement or other constitutional violations. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). Plaintiff's Complaint does not allege such policy, custom, or any other basis allowing the court to infer that Wellpath is responsible for the Jail's sanitation.

Wellpath affirmatively states that is a private healthcare services company which provides a wide range of healthcare-related services for medical and behavioral healthcare in jails and prisons, among other inpatient and residential treatment facilities. Wellpath is exclusively a healthcare services company; it does not own or operate any of the correctional facilities in which it provides healthcare services. With regard to the Jefferson County Jail, Wellpath is not responsible for cleaning or sanitation. Nor does

Plaintiff's complaint allege that it is. Therefore, Wellpath need not address these allegations further.

Similarly, to the extent that Plaintiff complains about social distancing, masks, or other COVID-19 related protocols , Plaintiff does not allege that Wellpath has a policy or custom that caused him injury, or that Wellpath was involved in his alleged injuries in any way. Plaintiff bears the burden of pleading in such a way as to ensure that a defendant is placed on notice of his or her alleged misconduct in a manner sufficient to prepare an appropriate defense. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring)). Plaintiff does not allege any misconduct by Wellpath. Since Plaintiff does not allege that Wellpath was involved in these practices, Wellpath need not address them. To the extent that these allegations may be read to assert claims against Wellpath, these claims must be dismissed for failure to satisfy federal pleadings standards.

B. **Plaintiff's allegations regarding the medical staff, even if true, do not make Wellpath liable for a constitutional violation.**

As noted above, Plaintiff's one and only factual allegation against Wellpath is that the medical staff would not properly sanitize their equipment when going from one inmate to another while taking vitals and dispensing medication. [ECF 1 at 6]. This allegation is insufficient to state a plausible claim for relief against Wellpath and so the claim must be dismissed.

Plaintiff brought his complaint seeking relief for a constitutional violation under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must show that a constitutional

8

right was violated, and that the violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, when the defendant who allegedly caused the constitutional injury is a private corporation, like Wellpath, the plaintiff must show that the injury was directly caused by a policy or custom of that corporation. *Dubbs*, 336 F.3d at 1216. Plaintiff has not plausibly alleged that a constitutional right was violated, nor has he claimed that Wellpath has a policy or custom which caused the alleged violation. Thus, the claims against Wellpath must be dismissed.

      i.   *Plaintiff's complaint does not adequately plead a constitutional violation, since he cannot show that Wellpath was deliberately indifferent to a serious medical need.*

Plaintiff's Complaint appears to suggest that the medical staff's actions posed a serious risk of COVID-19 infection, and that this risk constitutes cruel and unusual punishment.

A prisoner may assert a claim pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments against a state actor for deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). The "deliberate indifference" standard is very high and not easily met; deliberate indifference requires actions that are "wanton" and "repugnant to the conscience of mankind." *Id.* at 105-06. In order to make out a deliberate indifference claim, the Plaintiff must satisfy both the objective and subjective components of the claim. *Callahan v. Poppell*, 471 F.3d 1166, 1159 (10th Cir. 2006). If the Plaintiff fails on either component, his claim is subject to dismissal. *Id.*

The objective prong of the deliberate indifference test considers whether the prisoner's need was sufficiently serious. When the claim rests upon the exposure to a risk of harm, as is the case here, the prisoner must show that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show the risk of which he complains is not one today's society chooses to tolerate." *Carter v. El Paso Cnty. Sheriff Dep't.*, 2015 U.S. Dist. LEXIS 71166, at *8 (D. Colo. June 2, 2015) (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). In this case, Plaintiff must show that the risk of COVID-19 infection is one that today's society will not tolerate. Wellpath acknowledges both the societal controversy surrounding the seriousness of COVID-19, and the fact that other circuits have found COVID-19 sufficiently serious to satisfy the objective element of this test. *See e.g. Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020). Wellpath assumes for purposes of this motion that the risk of COVID-19 infection satisfies the objective prong of the deliberate indifference test.

However, Plaintiff does not adequately plead, and cannot meet, the subjective prong of the test. Plaintiff's complaint must allege that Wellpath knew he faced a substantial risk of harm and that it disregarded that risk, by failing to take reasonable measures to abate it. *Callahan*, 471 F.3d at 1159 (quotations omitted). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikamura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2008) (citations omitted). The subjective component is similar to "recklessness in the criminal law," where, to act recklessly, a "person must

'consciously disregard' a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith," that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff's complaint has no allegations with regard to the medical staff's mental state. Plaintiff does not allege that they deliberately disregarded the risk of COVID-19, nor that they acted recklessly. Plaintiff alleges only that the medical staff failed to employ adequate sanitation procedures between inmates. This allegation is insufficient to show that the medical staff acted in an "obdurate" "wanton" or "repugnant" manner, or that they consciously disregarded the risk of COVID-19, especially when Wellpath—like the rest of the county— was facing a shortage of personal protective equipment and cleaning supplies. Plaintiff's allegations do not satisfy the subjective element of his deliberate indifference claim, and so the claim must be dismissed.

ii. *Plaintiff does not allege that Wellpath had an unconstitutional custom or policy of improper sanitizing which cause his alleged injury.*

Even assuming Plaintiff could demonstrate deliberate indifference amounting to a constitutional violation, Wellpath cannot be held vicariously liable for the actions of its unnamed medical staff. Wellpath is a private corporation contracted to provide medical care at correctional facilities such as the Jail. As a private corporation, it cannot be held liable under 42 U.S.C. § 1983 and the theory of liability established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) unless Plaintiff shows that Wellpath had an official policy or custom "that was the 'direct cause' or 'moving force' behind the constitutional violations." *Smedley v. Corr. Corp. of Am.*, 175 Fed. Appx. 943, 946 (10th Cir. 2005).

Wellpath cannot be held liable under a mere theory of respondeat superior liability. *Id.*; *Monell,* 436 U.S. 692. Thus, even if the medical staff failed to properly sanitize between inmates, as alleged, and even if such actions constituted deliberate indifference, Wellpath is only liable if it had a policy or custom which directly caused the constitutional violation. Plaintiff has not alleged that any such unconstitutional policy or custom exists, nor has he alleged any facts which suggest such policy or custom might exist, and thus the claims against Wellpath must be dismissed.

C.   **As a covered healthcare provider providing of COVID-19 countermeasures, Wellpath is entitled to immunity under the PREP Act.**

Plaintiff's claims for relief against Wellpath must be dismissed because it is afforded liability immunity under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (2006) (the "PREP Act").

Plaintiff's Complaint admits that he was given medical countermeasures against COVID-19—specifically, that he was provided a cloth mask and that his vitals were checked by the medical staff. To the extent that Plaintiff alleges these countermeasures were inadequate, Wellpath is entitled to immunity.

The PREP Act provides immunity from claims such as those in Plaintiff's Complaint. The Act empowers the Secretary of Health and Human Services to issue a declaration providing immunity for "covered persons" from suits and liability under federal and state law relating to the administration of a "covered countermeasure" during a public health emergency." 42 U.S.C. § 247d-6d(a). On March 10, 2020, the HHS Secretary issued a Declaration invoking the PREP Act for the COVID-19

pandemic. The Declaration was effective as of February 4, 2020 and is attached hereto as **Exhibit A**.

The immunity afforded by the PREP Act applies specifically to healthcare providers such as Wellpath in the purchase, administration, dispensing, prescribing, distribution and use of countermeasures to prevent or mitigate the spread of COVID-19. Under the Declaration, covered healthcare providers include "*any* person authorized to prescribe, administer, or dispense the Covered Countermeasures" and Covered Countermeasures include "*any* diagnostic or *any* other device … used to treat, diagnose, cure, prevent, or mitigate COVID–19." *See Exhibit A* at V and VI.

Wellpath is a healthcare provider authorized to provide medical diagnosis at the Jail. Wellpath was taking inmate's vitals and watching for signs of COVID-19 infection. Wellpath is therefore entitled to immunity as a covered healthcare provider who qualifies as a person administering and/or using a covered countermeasure during the COVID-19 outbreak and emergency.

To the extent that Plaintiff's allegations against Wellpath are premised on the inadequacy and inappropriateness of Wellpath's use of covered countermeasures—such as face masks, testing, social distancing, etc.—to prevent the spread of COVID-19 at the Jail, Wellpath is "immune from suit and liability under Federal and State law." 42 U.S.C. § 247d-6d(a)(1). Therefore, the claims against it should be dismissed in their entirety.

There is a single exception to the immunity provided in the PREP Act, which is for "an exclusive Federal cause of action against a covered person for death or serious

physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1).

Any action based on willful misconduct "shall be filed and maintained only in the United

States District Court for the District of Columbia." 42 U.S.C. § 247d-6d(e)(1). The claim

must also be pleaded with particularity and be verified and accompanied by a

physician's affidavit and certified medical records. 42 U.S.C. § 247d-6d(e)(3) and (4).

Plaintiff has not raised such a claim, let alone a claim in the proper venue with the

necessary particularized allegations and supporting documentation. Therefore, there is

no avenue by which the Plaintiff may circumvent the PREP Act immunity, and the

claims against Wellpath must be dismissed with prejudice.

## CONCLUSION

Plaintiff's claims for relief against Wellpath must be dismissed with prejudice.

Plaintiff has not alleged that Wellpath is responsible for the conditions of his

confinement with regard to sanitation or social distancing and indeed Wellpath is not

responsible for those conditions of imprisonment.  Additionally, Plaintiff has not

adequately demonstrated that Wellpath or its employees were deliberately indifferent.

Nor has Plaintiff alleged that Wellpath had a policy or custom which was the cause of

his alleged constitutional injury. Finally, Wellpath is immune from suit due to its status

as a covered provider under the PREP Act and the Secretary of Health's COVID-19

Declaration.

WHEREFORE, for all the reasons stated herein, Wellpath respectfully asks the

Court to dismiss the claims against it with prejudice and award any other relief it deems

just and proper.

Respectfully submitted this  31st day of December 2020,

_s/ Rodrigo Lugo_
Catherine O'Brien Crum, Esq.
Rodrigo Lugo, Esq.
Nixon Shefrin Ogburn Drew, PC
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
Phone: 303-773-3500
Fax: 303-779-0740
cobrien@nixonshefrin.com
rlugo@nixonshefrin.com
*Attorneys for Defendant Wellpath*

## CERTIFICATE OF SERVICE

Civil Action No. 20-cv-02968-NYW

I hereby certify that on this 31st day of December 2020, I electronically served a true and complete copy of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the e-mail addresses for the following:

*For Jeff Shrader*
rbender@jeffco.us
Rachel Jane Marilyn Bender, Esq.
rklymkow@jeffco.us
Rebecca Philana Klymkowsky
Jefferson County Attorney's Office
100 Jefferson County Parkway, Suite 5500
Golden, CO  80419

*For Jefferson County Sheriff's Office and Jeff Shrader*
girrensq@hallevans.com
Quinn S. Girrens, Esq.
Ringela@hallevans.com
Andrew D. Ringel, Esq.
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, CO  80202

and hereby certify that I have mailed the document to the following non-CM/ECF participant via United States mail, first-class postage prepaid, and addressed to the following:

Raymundo Gurrola, Jr. (Pro Se)
P01130461
Jefferson County Detention Facility
P.O. Box 16700
Golden, CO 80402-6700

*Vaira Filipovs*
Vaira Filipovs

15